IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| MICHAEL W. LENZ,<br><br>           Plaintiff,<br><br> v.<br><br>GENE M. JOHNSON,<br>Director, Virginia Department of<br>Corrections, et al.,<br><br>           Defendants. | Civil Action Number 3:06CV430-JRS |

### MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiff MICHAEL LENZ's Complaint filed pursuant to 42 U.S.C. § 1983, as well as Defendants' Motion to Dismiss Lenz's Complaint. For the reasons discussed herein, Defendants' Motion to Dismiss is GRANTED, and Lenz's § 1983 Complaint is DISMISSED.

### I.  BACKGROUND

After a two-day jury trial in the Circuit Court for the County of Augusta, a jury convicted Lenz of capital murder and recommended the death penalty on July 28, 2000. The circuit court issued a final order formally imposing a sentence of death on October 20, 2000. Over the past several years, Lenz has unsuccessfully challenged the constitutionality of his capital murder conviction and death sentence in both state and federal courts. See Lenz v. Virginia, 534 U.S. 1003 (2001); Lenz v. Washington, 444 F.3d 295 (4th Cir. 2006); Lenz v. True; 373 F. Supp. 2d 606 (W.D. Va. 2005); Lenz v. True, 370 F. Supp. 2d 446 (W.D. Va. 2005); Lenz v. Warden of Sussex I State Prison, 267 Va. 318, 593 S.E.2d 292 (2004).

On May 26, 2006, the Office of the Attorney General for the Commonwealth of Virginia asked that the state circuit court order Lenz's execution to be carried out on July 27, 2006. On June 1, 2006, the circuit court granted that request and ordered that Lenz's execution be set for July 27, 2006. On June 21, 2006, Lenz filed the instant Complaint pursuant to 42 U.S.C. § 1983 for "violations, threatened violations, or anticipated violations of Plaintiff's right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (Compl. ¶ 1.) Defendants are several individuals, known and unknown, employed by the Commonwealth of Virginia, who will allegedly be involved in preparing for and carrying out Lenz's execution.

Among Lenz's many requests for relief in his method-of-execution challenge, he asks for the following:

- a preliminary injunction or stay of execution pending resolution of the merits of his Complaint;

- a permanent injunction barring Defendants from executing him in the specific manner they currently intend;

- a declaration that the current administration of lethal injection chemicals in Virginia is unconstitutional unless protocols and procedures are established to ensure to a reasonable degree of medical certainty that a surgical plane of anesthesia can be maintained throughout the process, and that the individual monitoring the anesthesia must be adequately trained and able to assess anesthetic depth;

- a requirement that Virginia establish public protocols involving a process through which performance during executions is reviewed to assess whether certain goals are met in each execution;

- a declaration that the use of a muscle blocking agent as part of the protocol is unconstitutional, because it interferes with the observer's ability to determine whether a surgical plane of anesthesia is being achieved and maintained;

- a declaration that electrocution violates due process and constitutes cruel and unusual punishment;

- the right to conduct discovery in this matter, and also an evidentiary hearing;

- a requirement that Defendants supply Lenz's counsel (and similarly situated death row inmates) with information sufficient to make a choice between alternative methods of execution, and that this information be kept current and be provided to inmates at least thirty days before the Commonwealth takes any action designed to establish an execution date; and

- reasonable attorneys' fees and costs of suit.

(Id. ¶¶ 45–53.)

Defendants filed their opposition and a Motion to Dismiss on July 11, 2006. Lenz filed his opposition to the Motion to Dismiss on July 18, 2006. Defendants then filed a reply on July 19, 2006, making the matter ripe for adjudication. None of the parties requested a hearing. Because the facts and legal contentions have been made clear in the four briefs and dozens of exhibits submitted by the parties, the Court can properly proceed without the aid of oral arguments.

## II. THE PARTIES' ARGUMENTS

### A. Lenz's Arguments

As a preliminary note, as Lenz acknowledges, he was obligated to select either lethal injection or electrocution as a method of execution at least fifteen (15) days before his scheduled execution date, pursuant to § 53.1-234 of the Code of Virginia. See Va. Code. Ann. § 53.1-234 (Repl. Vol. 2005). He did not do so. Under the statute, if an inmate does not select a method on his own, lethal injection will be selected by default. Although Lenz claims that he has not been provided with sufficient information describing either method, the fact remains that his inaction has resulted in the selection of lethal

injection by default. Accordingly, Lenz has waived any challenges to the constitutionality of electrocution as used as a method of execution in Virginia. See Reid v. Johnson, 333 F. Supp. 2d 543, 552 (E.D. Va. 2004) (citing Stewart v. LaGrand, 526 U.S. 115, 119 (1999)). Lenz's arguments are discussed below.

### 1. Virginia's Lethal Injection Procedure

Lenz first clarifies that he is not challenging the particular chemicals used to carry out a lethal injection execution in Virginia.[1] Instead, Lenz's Complaint is aimed at the manner in which the chemical cocktail is administered. Specifically, Lenz warns the Court that this particular combination of chemicals, if not properly administered, would pose a "foreseeable and unnecessary risk of causing the inmate to consciously suffer an excruciatingly painful death." (Compl. ¶ 15.) In Lenz's estimation, the administration of the second and third chemicals is safe and humane "only if the inmate is put into and maintained at a surgical plane of anesthesia." (Id. ¶ 16.) A surgical plane, Lenz explains, is characterized by "loss of consciousness, loss of reflex muscle response, and loss of response to noxious stimuli." (Id.)

Lenz's Complaint is grounded primarily in his concerns over an inadequate level of training and qualifications of the individuals who administer the lethal combination of chemicals. For example, Lenz points to several filings in the case of Walker v. Johnson, 1:05cv934 (E.D. Va. 2006), which was pending in this District until May 22, 2006.[2] In that § 1983 case, the death row inmate's Memorandum

---

[1] For a description of the chemicals used, see id. at 546–48.

[2] The Court issued an order striking the Walker case from its trial docket on May 22, 2006. The Order was issued on the apparent basis that the Court would be granting Defendants' Motion for Summary Judgment on Walker's challenge to Virginia's lethal injection procedure. The Memorandum Opinion has not yet been issued, and the official Order granting Defendants' Motion for Summary Judgment has likewise not been issued to date.

in Support of his Motion for Summary Judgment included excerpts from the deposition testimony of four anonymous executioners who work for the Virginia Department of Corrections. (See Defs.' Mem. Supp. Mot. Dismiss Ex. 3.) Lenz highlights the executioners' lack of medical training and inability to ensure that condemned inmates have achieved a surgical plane of anesthesia. The executioners had very limited medical training and no medical licenses or certifications. Moreover, the executioners had never administered drugs intravenously except in the context of a lethal injection procedure.

With that backdrop in place, Lenz explains that failure to ensure that a surgical plane of anesthesia is achieved and maintained could result in "agonizing torture." (Compl. ¶ 18.) Lenz represents that he has not been provided with sufficient information to determine if he would be sufficiently anesthetized. As such, Lenz argues that "[t]here is an unnecessary risk that the protocol Virginia intends to employ when executing [him] by lethal injection would impose severe pain and suffering," in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Id. ¶ 19.)

Lenz cites a series of recent federal cases to support his proposition that courts have, in the past few months, started being more cautious and less skeptical over challenges to lethal injection procedures. See, e.g., Taylor v. Crawford, 445 F.3d 1095 (8th Cir. 2006) (remanding to the district court to give the inmate more time to litigate the merits of his § 1983 complaint); Morales v. Hickman, 415 F. Supp. 2d 1037 (N.D. Cal. 2006) (requiring extra safeguards before the State of California could proceed with lethal injection); Brown v. Beck, No. 5:06ct3018 (E.D.N.C. Apr. 7, 2006) (denying a preliminary injunction request provided that during the execution, there would be medical personnel present with sufficient medical training to ensure that the inmate would be completely unconscious prior to and during the administration of the second and third chemicals).

### 2. Case Law in this District and Hill

Lenz discounts this Court's rulings in two recent § 1983 lethal injection challenges: 1) Reid v. Johnson, 333 F. Supp. 2d 543 (E.D. Va. 2004) and 2) Vinson v. Johnson, No. 3:06cv230 (E.D. Va. Apr. 19, 2006). Specifically, Lenz claims that the Court's special focus on the particular "chemical recipe" in Reid amounted to the denial of injunctive relief without proper consideration of all aspects of Virginia's lethal injection protocol. Because the Court in Vinson gave deferential weight to Reid, Lenz suggests that the Vinson decision is somehow tainted with faulty logic. Lenz emphasizes that the recent decision of the Supreme Court of the United States in Hill v. McDonough, 126 S. Ct. 2096 (2006), holds that challenges to a particular administration of a lethal injection protocol—not just to the chemicals themselves—may properly be brought as § 1983 complaints.

### 3. Factor Balancing Under Blackwelder

Immediately preceding his discussion of the four-part balancing test for injunctive relief, Lenz hones in on the possibility that this Court might conclude that he engaged in unnecessary delay in bringing this challenge. Lenz is quick to point out that delay is arguably relevant only to the issue of harm to the defendants—one prong of the Blackwelder balancing test. See Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 194–96 (4th Cir. 1977). Lenz then discusses all four balancing factors, first arguing that the harm to the plaintiff if the preliminary injunction request were denied would be an unreasonable risk of unnecessarily feeling intense pain. Second, as for the harm to the defendants if the injunction were granted, Lenz contends that he was forced to wait this long to challenge his lethal injection procedure, because Defendants have constantly been reluctant and non-forthcoming in providing the details of the lethal injection procedure. As a result, Lenz claims that his challenge to lethal injection did not become ripe until his execution date was set, so the defendants

could not credibly claim to be harmed by what they perceive to be Lenz's delay tactics. Lenz argues that he is likely to succeed on the merits based largely on the extensive evidence that was presented in the Walker case. See Walker v. Johnson, 1:05cv934 (E.D. Va. 2006). Finally, Lenz avers that the public interest is best served by complete and accurate information, thereby justifying a stay of execution in this case.

### 4. Exhaustion of Administrative Remedies

Lenz acknowledges that a person cannot bring a § 1983 complaint until administrative remedies "as are available" are exhausted. Lenz argues, however, that Virginia does not afford any true administrative remedy for prisoners who wish to challenge the protocol used for lethal injection. Virginia Corrections officials have explained that such a complaint is "non-grievable," because it is outside of the Department of Corrections' control. Nevertheless, Lenz states that he did at least begin the grievance process.

## B. Defendants' Opposition and Motion to Dismiss Lenz's Complaint

### 1. Binding Precedent Requires a Denial of Any Injunction or Stay

Defendants attack Lenz's Complaint on numerous grounds, the first of which is rooted in case law authority. Defendants offer a fairly comprehensive discussion of recent § 1983 method-of-execution challenges. A summary would be helpful to frame Lenz's Complaint within the proper context.

As Defendants explain, in 2004, the Supreme Court handed down its decision in Nelson v. Campbell, 541 U.S. 637 (2004). In Nelson, the Court reviewed the issue of whether a specific "cut down" procedure used in lethal injection in Alabama could be challenged in a § 1983 complaint, instead of through a habeas corpus petition with the attendant rules concerning successive petitions. The Court

7

ultimately held that inmates could challenge a "cut down" procedure in a § 1983 proceeding, because this would not amount to a broad attack on executions in general. The Court noted, though, that an inmate could not obtain a stay of execution to litigate a § 1983 complaint if he delayed bringing his suit until his execution was imminent. See id. at 650 (citing Gomez v. United States Dist. Ct., 503 U.S. 653 (1992)).

Defendants recognize the importance of several recent decisions in particular. First, in Reid v. Johnson, this Court was faced with a condemned inmate's request for a preliminary injunction of his execution so that he could litigate a § 1983 claim that the chemicals and procedures used in Virginia's lethal injection procedure were cruel and unusual. See 333 F. Supp. 2d 543 (E.D. Va. 2004). Reid's challenge to Virginia's lethal injection method was virtually identical to Lenz's current challenge. The Court held a full evidentiary hearing on Reid's § 1983 complaint, which included testimony from several witnesses. Stating that injunctive relief was a far-reaching power requiring an analysis under equitable principles, the Court denied Reid's request and held:

> Each of the factors the Court must consider in granting such relief weigh decidedly and firmly against Reid: the potential for Reid to experience any harm is negligible, the harm to the state if an injunction is issued is severe, Reid is highly unlikely to succeed on his underlying claim, and his inexcusable delay precludes his access to equity.

Id. at 554.

In discussing the potential for harm to the injunction applicant, the Court indicated that this consideration must not take into account the fact of "inevitable death," because "[t]he 'harm' of [the inmate]'s death flows from . . . [the] crimes and the sentence imposed by the state rather than from the method the state has chosen to execute the sentence." Id. at 550. Elaborating further, the Court also noted: "Similarly excludable from the calculus of likely harm is pain and suffering that is attributable

8

not to the drugs to be administered but rather to the remote possibility of human error and negligence inherent in any human endeavor." Id.

The Court paid special attention to the potential for harm to Reid if the stay request were denied. As the Court observed, "under the protocol followed by Virginia the chance that Reid will be conscious of any pain associated with the second two drugs and of his death is less than 6/1000 of one percent. . . . [which is] so remote as to be nonexistent." Id. at 551. The Court concluded that the harm to Reid "would be a thin shadow compared to" the "'profound [resulting] injury to the powerful and legitimate interest in punishing the guilty'" if an injunction were granted. Id. at 552 (quoting Calderon v. Thompson, 523 U.S. 538, 556 (1998)).

With respect to Reid's delay in filing his Complaint,[3] the Court noted that Reid's last-minute complaint precluded equitable relief under Fourth Circuit and Supreme Court precedent: "Reid's delay in this matter is of significant magnitude in and of itself to foreclose any claim to equity." Id. at 554. The Court observed that Reid "had over four years in which he could have challenged the details of his execution without unduly upsetting the state's schedule for carrying it out," and that by waiting until his execution was imminent, Reid left "little doubt that the real purpose behind his claim [was] to seek a delay of his execution, not merely to effect an alteration in the manner in which it [was] carried out." Id. (internal quotations and citation omitted). Defendants note that the Fourth Circuit affirmed this Court's decision and denied an injunction. The Supreme Court also denied Reid's injunction application, and he was executed on schedule. Reid v. Johnson, 542 U.S. 963 (2004).

Defendants also place substantial weight on this Court's recent decision in Vinson v. Johnson, No. 3:06cv230 (E.D. Va. Apr. 19, 2006). In Vinson, when faced with an identical suit to the one

---

[3] Reid was sentenced to death in February 1998, yet waited until December 15, 2003, three days before his scheduled execution date of December 18, 2003, to file his complaint.

presently before this Court, the Court rejected Vinson's arguments and denied a stay, despite the fact that Hill was pending before the Supreme Court. After hearing oral arguments, the Court dismissed the suit and denied all the requested relief—identical to the relief requested in the instant case. The Court's factor-balancing analysis mirrored the logic articulated in Reid. The Court relied on the Fourth Circuit's opinion in Reid, along with Vinson's failure to exhaust available administrative remedies and his election by default of death by lethal injection, in concluding that Vinson's likelihood of success on the merits was negligible. Importantly, the Court also emphasized that Vinson's § 1983 challenge pertained only to speculative risks inherent in the lethal injection process generally, as opposed to their effect on Vinson in particular. The Court found that Vinson was attacking a constitutional method of execution and that his claims were indistinguishable from any other similarly situated death row inmate.

Finally, Defendants cite the case of Walton v. Johnson, No. 2:06cv258 (E.D. Va. 2006). Before Hill was decided, this Court granted Walton a stay of execution on June 7, 2006, pending the resolution of Hill. On that same date, the Fourth Circuit vacated this Court's decision. Accordingly, the Court lifted the stay on June 15, 2006. The Supreme Court denied Walton's subsequent motion to stay his execution to allow him time to litigate his § 1983 complaint.

**2.   Lenz's Request for a Stay or Injunction Should Be Dismissed on the Merits**

In arguing that Lenz's request for a stay should be denied on the merits, Defendants first suggest that Lenz has engaged in dilatory conduct. Defendants highlight the holding in Gomez v. United States District Court for the proposition that when a prisoner challenges a method of execution on the grounds that it will subject him to cruel and unusual punishment, relief is not available if he waits until his execution is imminent before seeking a remedy. See 503 U.S. 653, 654 (1992). Defendants note that Lenz did not make any challenge to the procedures used for execution in Virginia at his trial, on direct

10

appeal, or in his state and federal habeas corpus proceedings. Instead, he waited until his execution was imminent and, therefore, should be denied relief.

Lastly, Defendants argue that Lenz has only a remote likelihood of success on the merits. They devote nearly five pages of their Memorandum in Opposition to support their contention that Lenz has not exhausted his administrative remedies by failing to pursue all levels of grievance review. Defendants also argue briefly that because Lenz was always able to choose electrocution—which has been universally upheld as constitutional—he waived his challenge to the lethal injection method. In sum, Defendants state that Lenz's Complaint is both procedurally and equitably barred. Defendants ask that this Court deny Lenz's request for a stay of execution or preliminary injunction and dismiss his Complaint.

### III.   DISCUSSION

Lenz's challenge to Virginia's lethal injection protocol is but one of hundreds of similar complaints that have made their way to the federal court system in recent years. Likewise, Lenz's proposals, while clever, are not at all novel. Indeed, the only nuances Lenz adds are in his discussion of several cases—none of which constitutes binding authority on this Court—tending to support a more cautious approach to handling § 1983 complaints challenging lethal injection methods of execution. Aside from references to some new, non-binding case law, Lenz's challenge involves a familiar procedural history, substantially overlapping facts, and nearly identical arguments to many similar complaints that have been rejected in the Fourth Circuit and in other federal courts across the country.

A practical starting point is the most recent Supreme Court case addressing challenges to lethal injection, Hill v. McDonough, 126 S. Ct. 2096 (2006). Lenz relies on Hill for the proposition that a § 1983 complaint can challenge aspects of a lethal injection protocol other than the chemical combination

itself, provided that the relief sought does not completely foreclose execution. That is as far as <u>Hill</u> reaches. <u>Hill</u> involved a narrow procedural question and has a correspondingly limited holding. The opinion does not comment in any way on lethal injection challenges in substantive terms. <u>See</u> <u>id.</u> at 2104 ("The equities and the merits of Hill's underlying action are . . . not before us."). While stopping short of arguing for an overly broad interpretation of <u>Hill</u>, Lenz does contend that this Court, in <u>Reid</u>, improperly refused to consider aspects of the lethal injection protocol other than the chemical cocktail itself for fear that those factors could only be properly challenged in a habeas corpus petition. It is unquestionable, though, that <u>Reid</u>'s and <u>Vinson</u>'s discussions of the merits of the complaints at issue are still good law in the wake of <u>Hill</u>. In short, this Court can and will follow very clear guidance on how to handle § 1983 complaints of this sort.

      The analysis begins with the premise that an inmate's request for a stay of execution asks a court to invoke its equitable powers for granting injunctive relief. <u>See id.</u> The Supreme Court has cautioned that a stay of execution "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." <u>Id.</u> Tellingly, Part III of the opinion in <u>Hill</u> is devoted solely to emphasizing the extraordinary nature of stay requests and, specifically, the equitable presumption against granting them when the timing of their filing is suspicious. <u>Id.</u> ("A court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'") (quoting <u>Nelson v. Campbell</u>, 541 U.S. 637, 650 (2004)). The Supreme Court has stressed the need to be wary of obvious dilatory tactics and to guard against "abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process." <u>Gomez v. United States Dist. Ct.</u>, 503 U.S. 653, 654 (1992); <u>see</u> <u>id.</u> ("A court may

consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief.").

The Fourth Circuit has been equally transparent in expressing its views. See, e.g., Stockton v. Angelone, 70 F.3d 12, 13 (4th Cir. 1995) ("[L]ast minute stays . . . represent an interference with the orderly processes of justice which should be avoided in all but the most extraordinary of circumstances."); Jones v. Murray, 976 F.2d 169, 171 (4th Cir. 1992) (citing "yet another example of a petitioner who has waited until the eve of his execution to . . . [seek relief] without a justifiable excuse for the delay").

Turning to the facts before the Court, the timing of Lenz's § 1983 Complaint—filed almost exactly one month before his scheduled execution date—gives rise to the presumption that Lenz is engaging in disruptive, dilatory tactics for the sole purpose of unjustifiably delaying the execution of his death sentence that was imposed nearly six years ago. In an effort to obfuscate what is reasonably clear, Lenz argues that he could not have filed his Complaint earlier, because Defendants are free to unilaterally alter the lethal injection protocol. As such, Lenz states that he needed to wait until his execution date had been officially set. This, of course, sounds plausible in theory but is purely specious in reality. The lethal injection protocol in Virginia is no secret. Courts have discussed it in great detail, see, e.g., Reid v. Johnson, 333 F. Supp. 2d 543 (E.D. Va. 2004), and death row inmates can undoubtedly inform themselves, through counsel or using other means, of the material details in advance of the fifteen-day statutory cut-off for selecting a method of execution. It is disingenuous at best to represent that Lenz was prevented from making an informed decision before the decision was made for him by default.

In establishing the merits of his Complaint and request for injunctive relief, Lenz has the burden of proving by a clear showing that a balancing of the equities falls in his favor. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). The Fourth Circuit's standard of analysis involves a four-factor "balance of hardships" test. See Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 194–96 (4th Cir. 1977). A court must consider the likelihood of irreparable injury to the plaintiff if the preliminary injunction were denied; the likelihood of harm to the defendant if the request were granted; the likelihood that the plaintiff will prevail on the merits; and the public interest. See id. First, Lenz cannot establish the likelihood that he would sustain irreparable injury if the preliminary injunction request were denied. As courts have noted, the potential injury must be actual and imminent, and not theoretical or speculative. See, e.g., Sun Microsystems, Inc. v. Microsoft Corp., 333 F.3d 517, 530 (4th Cir. 2003). The Court in Reid found that the chance that an inmate would be conscious and able to feel pain during the administration of the final two chemicals is less than 6/1000 of one percent. There is simply no way that Lenz can reconcile that scientific fact with a "likelihood" of irreparable harm.

Second, the harm to Defendants if the preliminary injunction were granted is easy to grasp. The Supreme Court in Hill acknowledged the interest states have in enforcing their criminal judgments, and the Court was emphatic in stating that "[t]he federal courts can and should protect [s]tates from dilatory or speculative suits." 126 S. Ct. 2096, 2104 (2006). Allowing illegitimate obstructions to the orderly administration of justice would certainly harm Defendants as they try to fulfill their public duties. Moreover, states have a recognized interest in ensuring the timely execution of death sentences. See Calderon v. Thompson, 523 U.S. 538, 556–57 (1998).

Third, given the clear weight of case law in this jurisdiction (discussed <u>supra</u> and <u>infra</u>), Lenz is not likely to prevail on the merits of his Complaint.

Fourth, with respect to the public interest, society's interest in retribution for criminal activity would erode rapidly if patently dilatory suits were permitted to derail the administration of justice time and time again. Lenz has been facing a sentence of death for almost six years. He has exhausted all state and federal avenues for challenging his sentence and the underlying conviction, yet, curiously, Lenz has raised these lethal injection arguments for the very first time in the instant § 1983 Complaint, filed shortly before his scheduled execution date. This area of law is not new, and Virginia's lethal injection protocol has not been an ever-changing mystery—certainly not in recent years. The motivation behind Lenz's last-minute Complaint is obviously to unjustifiably delay the inevitable. The Court finds that the equities weigh heavily in favor of denying Lenz's request for injunctive relief.

This finding is consistent with other recent rulings in this Court and in the Fourth Circuit. As already discussed, this Court, in <u>Reid v. Johnson</u>, 333 F. Supp. 2d 543 (E.D. Va. 2004), and <u>Vinson v. Johnson</u>, No. 3:06cv230 (E.D. Va. Apr. 19, 2006), rejected virtually the same arguments now before the Court. Notably, the Fourth Circuit affirmed the denial of a stay in each of those cases. Perhaps even more persuasive, though, is the case of <u>Walker v. Johnson</u>, 1:05cv934 (E.D. Va. 2006). Even if the Court permitted only a limited challenge to the lethal injection protocol in <u>Reid</u>, this Court undoubtedly permitted a full challenge in <u>Walker</u>, exploring evidence of the types of chemicals used, training and qualification of personnel, administration methods, and other factors. Notwithstanding the arguably more comprehensive presentation of facts in <u>Walker</u>, the Court, nevertheless, struck the case from its docket shortly after hearing summary judgment arguments.

Finally, in <u>Walton v. Johnson</u>, No. 2:06cv258 (E.D. Va. 2006), this Court did grant a stay of execution. Significantly, though, when the § 1983 defendants promptly appealed to the Fourth Circuit, the appellate court vacated the stay of execution the very same day on which the stay was imposed—June 7, 2006. It is difficult to contemplate a clearer indicator of the Fourth Circuit's stance toward last-minute § 1983 complaints posing challenges to the lethal injection method of execution in Virginia. Accordingly, and upon consideration of the merits of Lenz's Complaint,[4] the Court will grant Defendants' Motion to Dismiss.

### IV.  CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss is hereby GRANTED, and Lenz's Complaint is hereby DISMISSED.

An appropriate Order shall issue.

        /s/   James R. Spencer
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this   25th   day of July 2006

---

[4] Because this case can be properly dismissed on the merits, potential procedural bars, such as the failure to exhaust administrative remedies, need not be discussed.